UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 15-258-05 |
| VERSUS | JUDGE DONALD E. WALTER |
| JORGE MASSU | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the Court is a motion for compassionate release filed by the defendant, Jorge Massu ("Massu"). See Record Document 147. The Government opposes Massu's motion. See Record Document 153. Based on the following, the motion for release is **DENIED**.

Massu was charged in two counts of a six-count indictment along with four co-defendants. Count One charged him with conspiracy to distribute and possess with intent to distribute five hundred grams or more of a mixture or substance containing methamphetamine, and Court Four charged him with possession of five hundred grams or more of a mixture or substance containing methamphetamine with intent to distribute. See Record Document 2. Massu eventually pled guilty to Count Four. On May 5, 2017, Massu was sentenced by this Court to the statutory minimum term of 120 months of imprisonment. Massu is currently housed at the Federal Correctional Institution El Reno, Oklahoma ("FCI El Reno"), and he has a projected release date of July 2024.

Massu filed a motion seeking compassionate release to home confinement based on his assertion that his obesity makes him particularly susceptible to becoming seriously ill if he contracted COVID-19. See Record Document 147. Specifically, Massu requested that the Court "modify [his] term of imprisonment to time served and impose a special condition that [he] serve a period of home confinement while on supervise release that will effectively allow him to finish the remaining portion of his prison sentence on home confinement." Id. at 6. The Government

concedes that Massu has exhausted his administrative remedies by filing a request through the Bureau of Prisons ("BOP") and the request was denied. See Record Document 153 at 5; see also 18 U.S.C. § 3582(c)(1)(A) (Under this section, the Court has the authority to reduce a defendant's sentence "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. . . .").

The Government maintains that Massu's motion fails on the merits. See Record Document 153. The Government also contends that Massu has not established an "extraordinary and compelling reason" for release as the term is defined in Section 3582(c)(1)(A). See id. Although Massu asserts that he is entitled to compassionate release based on his condition of obesity[1], his medical records reveal that he has received both doses of the COVID-19 vaccine. See id., Ex. 4. The Government further contends that the factors contained in 18 U.S.C. § 3553(a) weigh against Massu's release. See id.

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824, 130 S. Ct. 2683, 2690 (2010). Under 18 U.S.C. § 3582(c), a court generally "may not modify a term of imprisonment once it has been imposed," except: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where

---

[1] Obesity is a COVID-19 confirmed risk factor recognized by the CDC ("Adults of any age with the following conditions **are at an increased risk** of severe illness from the virus that causes COVID-19: . . . Obesity (body mass index [BMI] of 30Kg/m or higher but < 40kg/m)"). https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).

2

the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2). Section 3852(c)(1)(A)(i) provides that a court may reduce a prisoner's sentence after administrative remedies have been exhausted "if it finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

The Sentencing Commission addressed in a policy statement what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. See U.S.S.G. § 1B1.13.[2] However, the Fifth Circuit Court of Appeals recently held that this policy statement does not bind a district court in considering a motion filed by a defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), as opposed to a motion filed by the Director of the Bureau of Prisons. See United States v. Shkambi, 993 F.3d 388, 2021 WL 1291609, at *4 (5th Cir. Apr. 7, 2021). The Shkambi court concluded that "[t]he district court . . . is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." Id. The defendant bears the burden to establish that circumstances exist under which he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See United States v. Ennis, No. 02-1430, 2020 WL 2513109, at *4 (W.D. Tex.

---

[2] The Sentencing Commission's policy statement regarding compassionate release provides, in pertinent part, that the court may reduce a term of imprisonment "upon motion of the Director of the Bureau of Prisons. . . " if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court determines that--

    (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .

    (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The application notes to this statement then delineate examples of extraordinary and compelling reasons pursuant to this section.

May 14, 2020) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release." (citing United States v. Stowe, No. 11-803, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019)); United States v. Wright, No. 16-214, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (Petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute.").

While obesity is an underlying medical condition that poses increased risk for severe illness from COVID-19, courts have found that obesity, alone or paired with other medical conditions, does not provide adequate grounds for compassionate release. See United States v. Wilfred, No. 07-351, 2020 WL 4365531, at *5 (E.D. La. July 30, 2020); United States v. Gordon, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); United States v. Williams, No. 15-83, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility). Furthermore, Massu has not alleged that his obesity causes any diminished ability to provide self-care or that the BOP could not manage his condition appropriately.

Additionally, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 254,455 doses of the vaccine. See www.bop.gov/coronavirus (last updated 11/23/21). In fact, medical records reveal that Massu received both doses of the Pfizer COVID-19 vaccine as of August 25, 2021. See Record Document 153, Ex. 4. In the Fifth Circuit, courts have denied early release to inmates with a variety of

4

medical conditions who, like Massu, have been vaccinated for COVID-19. See United States v. Parham, No. 19-133, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021); United States v. Leavell, No. 07-202, 2021 WL 1517912, at *3 (E.D. La. April 16, 2021); United States v. Moore, No. 7-60, 2021 WL 2325014, at *3 (M.D. La. June 7, 2021). In light of this, Massu has failed to establish that extraordinary and compelling reasons exist to release him from prison.

The Court has also looked at the presence of COVID-19 at FCI El Reno. There are zero inmates and zero staff members who are currently testing positive out of 969 total inmates.[3] http://www.bop.gov/coronavirus (last updated 11/23/2021). Courts have held that "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). See, e.g., United States v. Clark, 451 F.Supp.3d 651, 657 (M.D. La. Apr. 1, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. . . .") (quoting United States v. Eberhart, 448 F.Supp.3d 1086 (N.D. Cal. Mar. 25, 2020)). Massu has not shown that inmates are currently not receiving adequate medical attention if they contract the virus. Additionally, Massu has not shown that the BOP is currently unable to adequately manage the COVID situation. This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for

---

[3] One inmate died from the virus since the pandemic began. No staff died from the virus. However, there are 457 inmates and 104 staff who have recovered from the virus. www.bop.gov/coronavirus (last updated 11/23/21).

sentence reductions or home confinement.[4]  Considering that Massu has received a COVID vaccination and the low number of cases at FCI El Reno, he has failed to establish the existence of sufficient reasons based on his obesity or the COVID-19 pandemic that would constitute extraordinary and compelling reasons to warrant relief.  Therefore, the Court finds that Massu has not met his burden.

Even assuming that Massu had identified extraordinary and compelling reasons, he is still not entitled to relief under the factors contained in 18 U.S.C. § 3582 and the sentencing factors set forth in 18 U.S.C. § 3553(a).  Section 3553(a), which sets forth the factors to consider in imposing sentence, requires the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentencing imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.  See 18 U.S.C. § 3553(a).

The Court finds that Massu has not demonstrated that he qualifies for compassionate release under these guidelines.  First, as previously mentioned, Massu was sentenced in this Court for possession with intent to distribute five hundred grams or more of methamphetamine.  Massu was also assessed points in his offense level for being an organizer or leader because he made arrangements with someone who worked for him to deliver a kilogram of methamphetamine to a

---

[4] Massu requested release to home confinement.  However, this request is **DENIED**, as the decision on whether to release an inmate to home confinement is within the exclusive purview of the Bureau of Prisons.  See 18 U.S.C. § 3621(b); United States v. Read-Forbes, 454 F.Supp.3d 1113, 1118 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Rodriguez, No. 15-198, 2020 WL 5369400, at *3 (E.D. La. Sept. 8, 2020).

potential buyer.  Furthermore, Massu has only served approximately 71 months of his 10-year mandatory minimum sentence.  A deviation below the mandatory minimum sentence that was set by Congress would create a sentencing disparity between Massu and other similarly situated defendants, thus invalidating a "just punishment" under 18 U.S.C. § 3553(a)(2)(A).  In light of these, and other facts, to reduce Massu's sentence would not reflect the seriousness of the offense, promote respect for the law or afford an adequate deterrence to criminal conduct.  Accordingly, the Section 3553(a) factors weigh against granting relief.

The Court shares Massu's concerns about the effect of COVID-19 in the prison setting. However, those concerns are not being ignored by the BOP or this Court.  The BOP is taking action to address COVID-19 concerns in its facilities. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, "expand[s] the cohort of inmates who can be considered for home release."  The BOP is currently reviewing prisoners to determine if temporary release to home confinement or some other type of release, removal, or furlough is appropriate, under the standards issued by the CDC for persons at heightened risk.  The BOP currently has 7,691 inmates on home confinement and the total number of inmates placed in home confinement from March 26, 2020 to the present (including inmates who have completed service of their sentence) is 34,674. https://www.bop.gov/coronavirus/ (last updated 11/23/2021).

For the foregoing reasons, **IT IS ORDERED** that Massu's motion is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 29th day of November, 2021.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

7